Case number 13-6301, United States v. Calvin Badger. Argument not to exceed 15 minutes per side. Ms. Salinas, you may proceed for the appellant. Good morning. May it please the Court. I'm, for the record, not thrilled to be following Joel today. It was very nice to have him. Good supervisor. Thank you. The case that I'm here representing, appellant Calvin Badger, a gentleman who has been sentenced to a double, the top of the guidelines range, term of imprisonment and a $5,000 fine for his being an inmate in possession of a prohibited object, in this case, heroin. Before we begin talking about the items that I have prepared to discuss today, I think we should address the letter of conceding error that was filed by the government on Monday. My position on that is that we do agree with the government's analysis in the letter. In my reading, that's broader in some ways than what we're arguing with regard to the CCPA. I think it obviates the need to discuss or address the CCPA and the limitation on garnishment of wages set forth in the CCPA. It makes it move in this particular case. That's because if the court is not enforcing the method of collection of the fines, then it's not a relevant issue anymore. What does the district court judge do if it simply goes back with us saying nothing on that issue? Does it then come back to us if the court re-enters a similar kind of order with the proper findings under the necessary statutes or if the court waits for it not to be made and then enters the necessary findings? That's right. Under the relevant statute and guideline 18 U.S.C. 3572, what the court should be doing is talking about the amount of the fine and when it is due, whether it's in lump sum or installments. I think the court can do those things if it resentences Mr. Badger. It should specify if it's going to be in a lump sum or installments. That should be based on its assessment of his ability to actually pay the fine and the income that he has. Does the district court recommend to the Bureau of Prisons that it use the Inmate Financial Responsibility Program to deduct up to X percent of the amount to satisfy the unpaid portion? The district court can certainly recommend to the Bureau of Prisons and it can recommend to the Bureau of Prisons where it believes the prisoner should be placed, that it should recommend placement in certain programs including this program. The Bureau of Prisons isn't obligated to follow the recommendation and it's a voluntary program. So I guess my bottom line question is are we simply obligated to allow that question to be unanswered, that is the consumer of statute application, because it would be an advisory opinion, it would be addressing the point. Do we just have to wait and let that come back if and when it does? I think you should, because if this were a case where there was a default on the judgment and then we went down the path of utilizing those statutes for enforcement of the judgment, I think then the issue would be properly before the court. But if we send it back for resentencing without any guard instrument of wages and without enforcement of regulations or enforcement instructions, then I think it is something that this court can and should wait to decide. As much as we believe that our position is correct, but if it's obviated or mooted by the facts of the case, then it is proper for the court not to issue an advisory opinion. So what does that mean for us to do? Well, my suggestion, because if this is going back for resentencing based on these instructions, the record is problematic with regard to the fine in several regards. First of all, we have a conflict between the PSR states that he doesn't have an ability to pay a fine, and then we have a statement of reasons entered after the judgment, that's at page ID 126, stating that he has no ability to pay a fine and the fine is waived. So this is after the judgment has been entered and a fine has been applied. And then we have the third problem. So are you talking about his original judgment, the conviction sentence? No, I'm talking about in this case, the statement of reasons. And this isn't – it's after his minute order and the sentence has occurred. I mean, that's probably just a ministerial error, right? I mean, getting expressly said is throughout its – the Supreme Court stating that there's a presumption of reasonableness for fines or for the sentencing guideline range, which is the third problem with the record. So you have – like we have a PSR that says no ability to pay. We have a statement of reasons that says there's no ability to pay, and then we have a presumption of reasonableness stated on the record, and I think that presumption of reasonableness alone is at this basis for remand based on Supreme Court authority. Well, that's a bit of a slip of the tongue, I'm just saying. I mean, at least it's a true point as to us. It's just incorrectly stated there, but I mean it's – Right, and I know that Judge Sipar does sit by designation on the Court of Appeals, and I can see how that statement would be made in error, but it's fundamentally problematic. He could be confusing the statements or the standards that apply. And the government calls it a slip of the tongue, but he says very plainly that there is a presumption of reasonableness for the guideline range. On behalf of district judges everywhere, we do occasionally have slip of the tongue. I understand. So if I understand you correctly, Ms. Slinas, what you're saying is that we could properly decide the questions of whether there were – that is not challenged in terms of – by both sides, as being conceded to me earlier. We can properly decide if that was a slip of the tongue or if it was an improper – if there was a bad standard applied. Number one, we can properly decide whether there's a sufficient basis to require a $5,000 fine. And the rest, we have to wait. Right. Yes. I think – well, there are – I do have other issues if I have time to get to them, specifically the length of the sentence in this case, which is double the guideline range. But I do think when examining whether this was a slip of the tongue and whether it matters, I think this Court should look closely at the Supreme Court's decision with regard to whether – in Nelson v. United States, in that case, the Court sent it back and said, you know, the evidence in the record shows that the judge understood that the guidelines are not mandatory, that they're advisory. But still, that presumption of reasonableness wasn't stated. It's problematic. And it sent it back for a second time. So I think that the Court really should be concerned about those kind of statements. If there was some confusion, this is the time to clarify. With regard to the amount of the fine that was imposed, the PSR of this case is different than the cases that are being cited by the government in terms of those were plain error cases and where the PSR – where the fine was consistent in some way with the PSR or where the defendant didn't object. I think here, where you have a defendant who not only uses the PSR, which was adopted, as a basis for his position and then objects again in a written memorandum, I think the obligation to discuss the ability to pay the fine, I would expect a discussion that's more robust than he's young and he's healthy, and so therefore he can pay a $5,000 fine. The average prison wage is $0.40 an hour. The maximum prison wage is $0.40 an hour. Well, what about the fact that the district court mentioned all these deposits that Badger's family used? Yeah, and those are the – his family, he has young children, and those deposits are coming from his – the mother of his children, and I think certainly the court can consider those, but there's no indication that those are going to continue in the future or that they should be used as a basis for – But they did for Foxworth, right, in the past, right? Well, we have a six-month snapshot, and that's all we know based on the record before us. So if I may, I'd like to talk about the substantive unreasonableness of the sentence. From the perspective of the combination of the fine and the length of the sentence. I think what we have here is a record where the district court made very clear that he thought that the length of the sentence was largely irrelevant because of his status as a lifer, so therefore he was going to use the fine for specific deterrence, for punishment, for all of the factors in 3553A, and then – General deterrence, too, I would say. Because in the court's own words, lifers are not deterred by a lengthy prison sentence. So then after saying that, and then in its minute entry order, where it says that the United States has offered no evidence that there's anything about this particular crime that's egregious or outside the norm, that it is going to double the top end of the guideline range. So it's inconsistent even within the court's own reasoning that it's inconsistent. And then it gives a laundry list of, this is needed because of the facts and circumstances of the offense, and the facts and circumstances and the characteristics of the offender. But yet the court just said a paragraph above that there's nothing unique about this offense. So I think that the reasons for that are not sufficient to explain a sentence that's doubled the guideline range. And I understand that this is not part of the record, but it is part of the background knowledge or atmospherics of the case. Mr. Badger is not guaranteed to serve a life sentence. He's serving a sentence for 50 grams of crack cocaine, where he was enhanced. So there are, with the current state of drug reform laws, there is a chance that Mr. Badger won't be serving a life sentence. And we always have rule 35 as well. A hoard, a criminal history hoard. He had a prior conviction, and at the time, his one prior conviction enhanced him to a life sentence for that drug amount. If you're sentenced today, it would not be the case. I understand that the guideline range is based specifically on the amount of heroin that he had. With an enhancement for a possible distribution. So that is reflected. His own counsel, after the judge somewhat boxed him into a corner of what does Mr. Badger want? Does he want a fine? Does he want a 10-year sentence, 120 months? Or does he want a fine? I think in the context of that. But counsel has to stand up for that, right? Counsel didn't. I think there is something in the court's memorandum of opinion that says counsel didn't object to the 60-month sentence. He did. That's not true. Counsel. Counsel does propose an above 40. 48. He proposes 48 months. There's a 12-month difference between counsel's proposal and the district court. I think counsel's trying to damage control based on where he sees this going. That it looks like there's going to be a substantial fine and a substantial long sentence. And he asked, there was a moment in the record where he paused and asked his client, are you okay with a 10-year sentence and no fine? And the client said no. The sentence did matter to him. So I think that shows you that to this defendant, the combination of those two is very powerful. And our position is it's substantively unreasonable. The court needed to do more to explain its reasons for a double guideline sentence. Thanks. Thank you. Mr. Lieberman. Good morning, Your Honor. So may it please the court. Dave Lieberman from the United States. You've been leading a path from Washington to Cincinnati. Business is good. And this ordinary sentencing appeal turned into something more. So let me start with the government's concession. We informed the court on Monday that we are no longer defending a portion of the district court's sentence, seizing a portion of Mr. Bander's commissary account, albeit for an entirely different legal reason. If the court has any questions about the government's concession, I'd be happy to respond to them. But I think our letter fully encapsulates our position. Do you agree that we should simply not address the application of the Consumer Protection Act? That's correct, Your Honor. The only aspect that Mr. Bander challenged in violating that statute was what he referred to as the ad hoc collection scheme. The government's concession takes care of that. In fact, it gives Mr. Bander more than what he asked for in his opening brief. It's possible that we will go back.  And if the fine remains unpaid, the government could initiate some of the enforcement procedures in 3613 or 3613A. It's probably unlikely given the amount of fine that we're talking here. What will most likely happen is Mr. Bander will face the choice of whether to participate in the inmate financial responsibility program. If he does voluntarily, the fine will solely be paid off. If he doesn't, he will spend a significant amount of his time losing a lot of the privileges that he currently enjoys in his institution. So we agree that if it does come up in the future, we will be happy to brief this. So you think the district court went beyond its authority under 3572D when it imposed a garnishment? Correct, Your Honor. We read Title 19 as imposing a very comprehensive framework for both imposing fines and collecting fines. The district court has authority to impose the fine and can do a number of things in accordance with that. It can schedule a payment, impose a payment schedule. It can also modify the payment schedule upon motion of a party. But the statutory section is very clear. When the fines are unpaid, the burden then shifts to the government to pay the fine or to collect the fine. And then if it so chooses, it can initiate certain judicial actions, a writ of garnishment, or the default option in 3613A. And that hasn't happened here. So until that happens, no, we don't think the district court appropriately ordered BOP to start its proceedings. But it could have set the amount of the fine and a schedule. Correct, Your Honor. In fact, this court has said in the context of restitution, which is a close cousin to fines, that district courts are obligated under the Mandatory Victim Restitution Act to impose a payment schedule even on an indigent defendant who has no assets and who is incarcerated. And so that we don't think would in any way violate the CCPA. It's only when the government comes in and seeks the enforcement of an unpaid fine. Okay. So if you're right about this, I take it your view is that we should do a limited remand and not a general remand? That's correct, Your Honor. You know, my question is why not just do it over? I mean, it's really not going to make a huge difference in time. It's true if we resolve the other issues, it means there won't be an appeal. So I get that point. But that has to go back. Anyway, I'm just curious why we wouldn't say, you know, we're just going to make a general remand and, you know, if the district court wants to think of some of these things that have been argued on the field, we can, but anyway, what's your take on it? Under this court's case law, the panel certainly would have discretion to order a general remand in this case. So, yes, I'm wondering, tell me which way that we should do it. The government, we don't believe it is necessary. The claims that Mr. Badger is raising under procedural and substantive unreasonableness, I don't think are going to change. And the record is fully clear on both those points. Both of the parties' positions are fully clear. And so we don't see any need to go back and have the district court do this over. This court can disagree with me. It has discretion to do so. But in terms of the procedural unreasonableness, again, the district courts mentioned that the guidelines carry a presumption of reasonableness. That wasn't even in context of a sentencing explanation. That was when the district court was actually inviting the parties to tell the court whether they thought a financial component of the sentence was warranted. If the court looks at the two district court's orders subsequent to that mention, this is at document 29 and document 35, the district court walks through the correct factors. In its last opinion, document 35, it cited ten different factors that the court has to consider when imposing the fine. And this is not a type of significant procedural error that is reversible under this court's case law. On substantive unreasonableness, I think the government's brief fully captures our position. I'm fully happy to stand on it unless the court has any specific questions. Is there any benefit from giving additional explanation to the district judge about why it imposed the sentence that it did? I think the district court explained why it imposed the sentence in very detailed terms, and I think the justification is there. Other courts have said that district courts may impose limited fines on indigent prisoners even if they have no current assets to be paid out of a future prisoner case. This fine was at the low end of the range that the guidelines authorized. The district court remarked that even if Mr. Edwards' commissary account remained at current levels, he could pay it off in three years. If they didn't, he will have to do so through the Inmate Financial Responsibility Program. But he's not going to lose any. He's not going to lose his house. He's going to be housed. And so for all these reasons, we don't see any sense of unreasonableness here. I thank the court. Thank you, Mr. Newman. We appreciate your argument. So let's move on. Can I ask you to begin by a general name and a question that Judge Sutton posed? What is your view on whether the general rules of procedure were limited in any way? Our position is a general remand is appropriate, especially considering the problems with the record that we discussed earlier, with the presumption of reasonableness stated on the record and with the conflict between the statement of reasons and the judgment that the court imposed. I think it could be a clearer, cleaner record. And frankly, if the court hears more robust information about the actual impact of this fine on Mr. Federer, that would be a benefit to the court. There's been more information presented at the appellate level than there was at the district court level. What do you think the odds are that there's a general remand that will not be repealed? I can't speak to that, to the odds of it. But I certainly think that if the court explained all of the things and conducted a thorough analysis, and especially if the court reduced the fine that was imposed for the sentence, Mr. Badger could be advised by his counsel that an appeal wasn't warranted. So I certainly advise clients all the time that an appeal isn't warranted on the record before it. So I don't think that's a guarantee. Well, Mr. Badger, in the particular case of Mr. Badger, he is a very thoughtful client, and he calls a lot and listens a lot, and so I think that he would listen, at least take the comments seriously or the advice seriously. If I could, I don't sense that the court is in a substantive reasonableness claim in terms of the length of the sentence. I really do urge the court to look closely at the reasons stated in the minute entry order, because there is a direct conflict between what the court says in one paragraph of its opinion and then the result that it reaches in the next. Where is that? It's at page ID 79 of the record. And specifically, the court states that there's nothing about an increase of the guideline sentence that isn't sufficient to accomplish all of the goals set forth. I'm paraphrasing here. But there's nothing in the guideline sentence that requires a variance from the guidelines. That's the government requested. And then in the next paragraph, it says that it's going to impose a sentence double the guidelines because he has continued to violate the law while in prison, which is true of every person who's convicted of the statute, and because he has shown no signs that he's capable of being rehabilitated, which is also true of everybody who's convicted of the statute. So we would ask the court to consider remanding with a full remand so that all of these issues can be addressed. Thank you. Thanks to both of you for your helpful arguments. And Mr. Lieberman, we really appreciate the confession of error. It's wonderful to work in a system where the government admits something could have been done a little better. It's just a great feature of our system. So thanks to you and your supervisors for letting us do that. Appreciate it. Thanks both of you. The case will be submitted. The court can call the next case.